**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

REBECA A.,

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

No. 5:25-CV-0506 (AMN/PJE)

---

**APPEARANCES:**

THE LAW OFFICES OF
STEVEN R. DOLSON, PLLC
6320 Fly Road- Suite 201
East Syracuse, NY 13057
*Attorneys for plaintiff*

SOCIAL SECURITY ADMINISTRATION
6401 Security Boulevard
Baltimore, MD 21235
*Attorneys for defendant*

**OF COUNSEL:**

STEVEN R. DOLSON, ESQ.

GEOFFREY M. PETERS, ESQ.

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

Rebeca A.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of the Social Security Administration ("the Commissioner") denying her application for supplemental security income ("SSI"). *See* Dkt. No. 1. Plaintiff moves for the Commissioner's decision to be vacated and remanded

[1] In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in 2018 to better protect personal and medical information of non-governmental parties, this Report-Recommendation and Order will identify plaintiff's last name by initial only.

for further proceedings. *See* Dkt. No. 11. The Commissioner moves for the decision to be affirmed. *See* Dkt. No. 15.[2] For the following reasons, it is recommended that the Commissioner's cross-motion be granted.

## I. Background

On January 13, 2021, plaintiff filed a Title XVI application for SSI, alleging a disability onset date of August 6, 2020. *See* T. 238-50[3] (*See* Dkt. No. 10-5).[4] On April 21, 2021, the Social Security Administration ("SSA") denied plaintiff's claim. *See id*. at 130-37 (*See* Dkt. No. 10-4). Plaintiff sought reconsideration, which the SSA denied on May 13, 2021. *See id*. at 138-48 (*See* Dkt. No. 10-4). Plaintiff appealed and requested a hearing. *See id*. 149-151 (*See* Dkt. No. 10-4). On September 16, 2021, a hearing was held before Administrative Law Judge ("ALJ") Jennifer Smith. *See id*. 34-59. (*See* Dkt. No. 10-2). On October 15, 2021, the ALJ issued an unfavorable decision. *See id*. 7-30 (*See* Dkt. No. 10-2). On September 8, 2022, the Appeals Council ("AC") affirmed the ALJ's October 15, 2021, hearing decision and the decision became final. *See id*. at 1-6 (*See* Dkt. No. 10-2). On November 3, 2022. plaintiff filed a complaint with this Court. T. 945-54 (*See* Dkt. No. 10-18). On February 6, 2023, the Court granted the parties' joint stipulation for remand and remanded the matter back to the agency for further proceedings. *See id*. at 956-57 (*See* Dkt. No. 10-18).

---

[2] This matter has been treated in accordance with General Order 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgement on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

[3] "T." followed by a number refers to the pages of the administrative transcript. *See* Dkt. No. 10. Citations to the administrative transcript refer to the pagination in the bottom, right-hand corner of the page. Citations to the parties' briefs refer to the pagination generated by the Court's electronic filing program located at the header of each page.

[4] Due to the voluminous nature and many parts of the administrative transcript, in addition to the record citation, the undersigned will include the docket cite for factual citations.

On July 20, 2023, another hearing was held before the ALJ. *See* T. 889-914 (*See* Dkt. No. 10-17). On August 3, 2023, the ALJ issued an unfavorable decision. *See id*. 858-88 (*See* Dkt. No. 10-17). On March 14, 2025, the AC affirmed the ALJ's August 3, 2023, hearing decision and the decision became final. *See id*. at 852-57 (*See* Dkt. No. 10-17). On April 24, 2025, plaintiff commenced the instant matter seeking judicial review of the ALJ's August 3, 2023, hearing decision. *See* Dkt. No. 1.

## II. **Legal Standards**

### A. **Standard of Review**

"In reviewing a final decision of the Commissioner, a district court may not determine de novo whether an individual is disabled." *Joseph J. B. v. Comm'r of Soc. Sec.*, No. 1:23-CV-652 (BKS/CFH), 2024 WL 4217371, at *1 (N.D.N.Y. Aug. 29, 2024), *report and recommendation adopted,* No. 1:23-CV-652 (BKS/CFH), 2024 WL 4216048 (N.D.N.Y. Sept. 17, 2024) (citing 42 U.S.C. §§ 405(g), 1388(c)(3)); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). "Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence." *Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 985-86 (2d Cir. 1987)); *see also Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). "Substantial evidence is 'more than a mere scintilla,' meaning that in the record one can find 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (quoting *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). "The substantial evidence standard is a very deferential standard of review . . . [This] means once an ALJ finds facts, we can reject [them] only if a reasonable factfinder would have

to conclude otherwise." *Id*. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (per curiam)) (internal quotation marks omitted). "Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion is arguably supported by substantial evidence." *Id.* (citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson*, 817 F.2d at 986)). "However, if the correct legal standards were applied and the ALJ's finding is supported by substantial evidence, such finding must be sustained 'even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's].'" *Id*. (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)).

B. **Determination of Disability**

"Every individual who is under a disability shall be entitled to a disability . . . benefit . . . ." 42 U.S.C. § 423(a)(1)(E). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" *Id.* § 423(d)(1)(A). "A medically-determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience." *Joseph J. B.*, 2024 WL 4217371, at *2 (citing 42 U.S.C. § 423(d)(2)(A)). "Such an impairment must be supported by 'medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citing 42 U.S.C. § 423(d)(3)). "Additionally, the severity of the impairment is 'based on objective medical facts,

diagnoses[,] or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience.'" *Id.* (quoting *Ventura v. Barnhart*, No. 04-CV-9018 (NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1037 (2d Cir. 1983))).

The Second Circuit employs a five-step analysis, based on 20 C.F.R. § 404.1520, to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.
>
> If he [or she] is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his [or her] physical or mental ability to do basic work activities.
>
> If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.
>
> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.
>
> Finally, if the claimant is unable to perform his [or her] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . .

*Berry*, 675 F.2d at 467 (spacing added). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Joseph J. B.*, 2024 WL 4217371, at *2 (quoting *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003)). "The plaintiff bears the initial burden of proof to establish each of the first four steps." *Id*. (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing *Berry*, 675 F.2d at 467)). "If the inquiry progresses to the fifth step, the burden shifts to the Commissioner to prove that

the plaintiff is still able to engage in gainful employment somewhere." *Id.* (citing *DeChirico*, 134 F.3d at 1180 (citing *Berry*, 675 F.2d at 467)).

## III. **The ALJ's Decision**

Applying the five-step disability sequential evaluation, the ALJ first noted that plaintiff has "not engaged in substantial gainful activity since January 13, 2021, the application date." T. 863 (*See* Dkt. No. 10-17). At step two, the ALJ found that plaintiff "has the following severe impairments: asthma, headaches, degenerative disc disease of the cervical and lumbar spine, minimal bilateral median nerve compression, obesity, anxiety disorder, depressive disorder, and panic disorder." *Id*. (*See* Dkt. No. 10-17). At step three, the ALJ determined that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id*. at 864 (*See* Dkt. No. 10-17).

Before reaching step four, the ALJ concluded that plaintiff retained the residual functional capacity ("RFC") to

> perform light work, as defined in 20 CFR 416.967(b), except she should not work at unprotected heights or climb ladders, ropes or scaffolds. She also should not work in close proximity to dangerous machinery or moving mechanical parts of equipment. [Plaintiff] can occasionally balance as defined in the [Selected Characteristics of Occupations ("SCO")], kneel, crouch, crawl, stoop, and climb ramps and stairs. She can frequently handle, finger and feel. [Plaintiff] should have no concentrated exposure to respiratory irritants, such as dust, odors, fumes and gases, wetness, humidity, and extreme hot and cold temperatures. She can tolerate no more than moderate levels of noise as defined Appendix D of the [SCO], 1993 Edition. She should also avoid working outdoors in bright sunshine and with bright or flickering lights, such as one would experience welding or cutting metals. Mentally, [plaintiff] can understand, remember, and carry out simple instructions. She can use judgment to make simple work-related decisions. [Plaintiff] should work in a job with occasional changes in the routine work setting. She cannot perform work requiring a specific production rate, such

> as an assembly line, or that requires hourly quotas. [Plaintiff] can have occasional contact with coworkers and supervisors, but no public contact.

T. 868 (*See* Dkt. No. 10-17).[5] At step four, the ALJ determined that plaintiff "is unable to perform any past relevant work." *Id*. at 877 (*See* Dkt. No. 10-17). Before reaching step five, the ALJ found that the "[t]ransferability of job skills is not an issue in this case because [plaintiff's] past relevant work is unskilled." *Id*. (*See* Dkt. No. 10-17). At step five, the ALJ determined that "[c]onsidering [plaintiff's] age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id*. (*See* Dkt. No. 10-17).

Ultimately, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since January 13, 2021, the date the application was filed." T. 878 (*See* Dkt. No. 10-17).

## IV. Discussion

### A. The Parties' Arguments

Plaintiff argues the ALJ "failed to properly evaluate the persuasiveness of various sources medical opinions regarding [her] ability to do work-related activities rendered by consultative examiner Elke Lorensen, MD. . . ." Dkt. No. 11 at 6. More specifically, plaintiff

[5] 20 C.F.R. §§ 404.1567(b) and 416.967(b) provide that the physical exertion requirements for "light work":

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b); 416.967(b).

argues Dr. Lorensen opined that "[s]he should avoid known respiratory irritants" and the ALJ erred by determining that she had a lesser limitation of "no concentrated exposure to respiratory irritants." *Id*. at 8-9. Plaintiff contends that the ALJ found the portion of Dr. Lorensen's opinion addressing respiratory limitations "to be persuasive because it is supported and consistent with the evidence and history, however, the [ALJ] gives no explanation as to why the [RFC] finding is less restrictive and does not cite to any evidence within the record to support her reasoning." *Id*. at 9. Plaintiff also states that the ALJ considered the opinions of state agency medical consultants, Dr. Sontheneni and Dr. Putcha, who opined that she "would only need to avoid concentrated exposure," but found their "respective opinions are only partially persuasive without citation to the record." *Id*. at 9-10. Further, plaintiff argues that the ALJ erred by placing no limitations on her ability to reach when "Dr. Lorensen opined in part that [she] would have a mild limitation in her ability to reach." *Id*. at 10 (citing T. at 709).

The Commissioner argues that the ALJ's determination should be affirmed. *See generally* Dkt. No. 15. The Commissioner maintains that the ALJ applied the supportability and consistency factors, and substantial evidence supports the ALJ's evaluation of Dr. Lorensen's opinion. *See id*. at 6-13. Alternatively, the Commissioner argues that even if the ALJ did not correctly apply the supportability and consistency factors, "Dr. Lorensen's opinion did not assess greater reaching or respiratory RFC limitations than the ALJ found." *Id*. at 10. The Commissioner explains that "it is well established that an opinion outlining mild (or less) physical limitations – even in reaching – is congruent with a light RFC, just as the ALJ found here." *Id*. at 10-11 (first citing *Randy L. B. v. Comm'r of Soc. Sec.*, No. 5:18-CV-0358 (GTS), 2019 WL 2210596, at *7

(N.D.N.Y. May 22, 2019), then citing *Marie W. v. Comm'r of Soc. Sec.*, No. 1:19-CV-1053 (WBC), 2021 WL 431656, at *4 (W.D.N.Y. Feb. 8, 2021)). The Commissioner also explains that "Dr. Lorensen's opinion that Plaintiff should 'avoid respiratory irritants' is not inconsistent with the RFC limitation that Plaintiff should avoid 'concentrated' exposure to such irritants." *Id.* at 11 (citing *Hatounian v. Comm'r of Soc. Sec.*, No. 3:15-CV-1194 (GTS/WBC), 2017 WL 9487189, at *8 (N.D.N.Y. Jan. 12, 2017), *report and recommendation adopted sub nom. Hatounian v. Colvin*, 2017 WL 605294 (N.D.N.Y. Feb. 15, 2017).

B. **RFC/Medical Opinions**

"RFC describes what a claimant is capable of doing despite his or her impairments, considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms." *Joseph J. B.*, 2024 WL 4217371, at *8 (quoting *Malcolm M. v. Comm'r of Soc. Sec.*, No. 1:17-CV-986 (CFH), 2019 WL 187725, at *4 (N.D.N.Y. Jan. 14, 2019) (first citing *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999), then citing 20 C.F.R. §§ 404.1545, 416.945))). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Id.* (quoting *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 48 n.3 (2d Cir. 2021) (summary order) (citing 20 C.F.R. § 404.1527(d)(2))). "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capabilities are not sufficient." *Id.* (quoting *Martone*, 70 F. Supp. 2d at 150) (citations omitted).

"In making the RFC determination, the ALJ must consider all relevant medical and other evidence, including any statements about what the claimant can still do provided by

any medical sources." *Joseph J. B.*, 2024 WL 4217371, at *8 (citing 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c)). "[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* (quoting *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order)). "The Court 'defer[s] to the Commissioner's resolution of conflicting evidence[.]'" *Id*. (quoting *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order)) (internal citation omitted). "Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, whether there is substantial evidence supporting the [plaintiff's] view is not the question; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Id*. (quoting *Elizabeth P. v. Comm'r of Soc. Sec.*, No. 3:20-CV-891 (CFH), 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022)) (internal quotation marks and citation omitted). "The ALJ must not ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, but [t]he Court will not reweigh the evidence that was before the ALJ." *Id*. (quoting *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019)) (internal quotation marks and citations omitted).

"For claims filed on or after March 27, 2017," an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) ['PAMFs'], including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a) (internal citation omitted). Rather medical opinions and PAMF's are evaluated based on their "persuasiveness." *Id.* In evaluating the

"persuasiveness" of a medical opinion or PAMF, an ALJ is to "consider" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors." *Id.* §§ 416.920c(a); 416.920c(c)(1)-(5). "However, in many cases, the ALJ only need 'explain' how the supportability and consistency factors were considered, as they are 'the most important factors.'" *Brian K. v. Comm'r of Soc. Sec.*, No. 5:24-CV-26 (CFH), 2025 WL 18718, at *4 (N.D.N.Y. Jan. 2, 2025) (quoting 20 C.F.R. § 416.920c(b)(2)); *see also* 20 C.F.R. § 416.920c(b)(2)-(3) (stating that an ALJ "is not required to" explain the remaining factors unless the ALJ determines that "two or more medical opinions or [PAMFs] about the same issue are both equally well-supported [ ] and consistent with the record [ ] but are not exactly the same").

For the "supportability" prong, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or [PAMFs], the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(1); *see also Kathleen A. v. Comm'r of Soc. Sec.*, No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *4 (N.D.N.Y. Mar. 7, 2022) (quoting *Carmen M. v. Comm'r of the Soc. Sec.*, No. 20-CV-6532 (MJR), 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021)) (noting that "[t]he supportability analysis focuses on 'how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations'"). With regard to the "consistency" prong, "[t]he more consistent a medical opinion(s) or [PAMFs] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or [PAMFs] will be." 20 C.F.R. § 416.920c(c)(2); *see also Kathleen A.*, 2022 WL 673824, at *5 (first quoting 20 C.F.R. § 404.1520c(c)(2), then citing *Galo G. v. Comm'r of the Soc. Sec.*, No. 20-CV-1011

(FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021)) ("In the consistency analysis, an ALJ must look outside the medical opinion itself to 'evidence from other medical sources and nonmedical sources in the claim,' and will find the medical opinion more persuasive the more consistent it is with these external sources.").

"ALJs are not required to state on the record every reason justifying a decision and [are] not required to discuss every single piece of evidence submitted." *Brian K.*, 2025 WL 18718, at *4 (quoting *Ryan v. Comm'r of Soc. Sec.*, No. 21-2947-CV, 2022 WL 17933217 at *2 (2d Cir. Dec. 27, 2022) (summary order) (quoting *Brault*, 683 F.3d at 448)) (internal quotation marks omitted). "However, they must articulate how persuasive they found the medical opinions and PAMFs." *Id*. (citing 20 C.F.R. § 416.920c(b)). "If the ALJ fails adequately to 'explain the supportability or consistency factors,' or bases '[the] explanation upon a misreading of the record, remand is required.'" *Id*. (quoting *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020) (quoting *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020), *report and recommendation adopted* 2021 WL 134945 (Jan. 14, 2021))); *see also Jennifer A. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1167 (MAD), 2023 WL 8654215, at *4 (N.D.N.Y. Dec. 13, 2023) (quoting *Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1314 (MAD), 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023)) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis.").

**1. Dr. Lorensen**

On April 6, 2021, Dr. Lorensen examined plaintiff. *See* T. 706-709 (*See* Dkt. No. 10-7). Plaintiff reported that she suffered from "migraines, asthma, arthritis, and ulnar neuropathy," as well as lower back and posterior neck pain. *Id*. at 706 (*See* Dkt. No. 10-7). Plaintiff also reported "weakness in both of her arms," "decreased grasp in her right hand," and "shooting pain from her right hand up the arm to the right shoulder." *Id*. (*See* Dkt. No. 10-7). Dr. Lorensen noted that plaintiff was diagnosed with asthma in 2019, "uses an inhaler as needed," and that her asthma was triggered by "[o]dors, perfumes, and pet dander." *Id*. (*See* Dkt. No. 10-7).

Dr. Lorensen's musculoskeletal examination of plaintiff showed

> [c]ervical spine shows full flexion, full extension, lateral flexion full bilaterally, and rotation to left full and right 60 degrees. No scoliosis, kyphosis, or abnormality in thoracic spine. Lumbar spine flexion 70 degrees, extension full, lateral flexion full bilaterally, and rotation 20 degrees bilaterally . . . Forward elevation and abduction of shoulders 120 degrees bilaterally. Full [range of motion] of elbows, forearms, and wrists bilaterally . . . No evidence subluxations, contractures, ankylosis or thickening. Joints stable and nontender. No redness, heat, swelling, or effusion.

*Id*. at 708 (*See* Dkt. No. 10-7). Dr. Lorensen noted "[n]o sensory deficit" and "[s]trength 5/5 in the upper . . . extremities." *Id*. (*See* Dkt. No. 10-7). Dr. Lorensen also noted "[h]and and finger dexterity intact. Grip strength 5/5 bilaterally." *Id*. at 709 (*See* Dkt. No. 10-7). Dr. Lorensen diagnosed plaintiff with neck pain, back pain, right hand problems, and asthma. *See id*. (*See* Dkt. No. 10-7). Dr. Lorensen opined that plaintiff had "[n]o gross limitations for sitting, standing, walking, and using the hands. Mild limitation for bending, lifting, carrying, and reaching. She should avoid known respiratory irritants." *See id*. (*See* Dkt. No. 10-7).

The ALJ determined that Dr. Lorensen's opinion was partially persuasive. *See* T. 876 (*See* Dkt. No. 10-17). The ALJ explained that

> Dr. Lorensen concluded from her consultative exam that [plaintiff] had no gross limitations for sitting, standing, walking, or using the hands (B7F). She had mild limitation for bending, lifting, carrying, and reaching. She should avoid known respiratory irritants (B7F). The undersigned finds the opinion that [plaintiff] should avoid known respiratory irritants persuasive. This is supported by the evidence showing a history of asthma, and consistent with evidence showing the claimant reported increased symptoms with exposure to smoke, cold, and weather changes. As for the other opinions, Dr. Lorensen examined [plaintiff] and presumably her opinion is supported by her examination findings. However, her opinion is vague and not phrased in vocationally relevant terms. The terms "gross" and "mild" are not defined. The opinion is not well explained and ultimately of little to no assistance in determining [plaintiff] residual functional capacity. To the extent she indicated the claimant had some limitations, it is consistent with the evidence, as the evidence does support that [plaintiff] impairments result in limitations.

T. 876 (Dkt. No. 10-17).

Plaintiff argues that the ALJ "failed to properly consider the persuasiveness of the opinions of consultative examiner Elke Lorensen, MD and articulate the most important factors of supportability (paragraph (c)(1)) and consistency (paragraph (c)(2))." Dkt. No. 11 at 8. As it pertains to plaintiff's asthma condition and Dr. Lorensen's opinion that "she should avoid known respiratory irritants," plaintiff argues that

> [t]his portion of Dr. Lorensen's opinion is found by the Administrative Law Judge to be persuasive because it is supported and consistent with the evidence and history, however, the Administrative Law Judge gives no explanation as to why the residual functional capacity finding is less restrictive and does not cite to any evidence within the record to support her reasoning.

*Id*. at 9. The undersigned disagrees.

As an initial matter, the ALJ's adoption of only a portion of Dr. Lorensen's opinion was not inherently improper. *See Walker v. Colvin*, No. 3:15-CV-465 (CFH), 2016 WL 4768806, at *10 (N.D.N.Y. Sept. 13, 2016) (additional citations omitted) ("[A]n ALJ may properly 'credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.' This is true even where the ALJ relies on a consultative examiner's examination findings but rejects the consultative examiner's medical source statement[.]"); *see also Matta*, 508 F. App'x at 56; *Daeshawn B. v. Comm'r of Soc. Sec.*, No. 5:24-CV-01034 (MAD/TWD), 2025 WL 2548794, at *6 (N.D.N.Y. June 30, 2025), *report and recommendation adopted sub nom. Daeshawn B. v. Bisignano*, No. 5:24-CV-1034 (MAD/TWD), 2025 WL 2205985 (N.D.N.Y. Aug. 4, 2025) ("An ALJ may therefore accept portions of a medical opinion that are consistent with the record and choose not to accept portions that are inconsistent with the record.").

Regarding the supportability factor, plaintiff's argument lacks merit. *See Tara M. B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1058 (MAD/DEP), 2023 WL 7286669, at *4 (N.D.N.Y. Sept. 21, 2023), *report and recommendation adopted sub nom. Tara B. v. Comm'r of Soc. Sec.*, No. 1:22-CV-1058 (MAD/DEP), 2023 WL 7281138 (N.D.N.Y. Nov. 3, 2023) (holding that the ALJ's review of the supportability factor was sufficient where the ALJ stated that the doctor's opinion was only "somewhat supported by her examination report."). Here, Dr. Lorensen supported her opinion of plaintiff's exposure to respiratory irritants limitation by reviewing plaintiff's medical records and her examination of plaintiff. *See* T. at 706-09 (*See* Dkt. No 10-7). The ALJ concluded the same. *See id.* at 876 (Dkt. No. 10-17).

Concerning the consistency factor, the ALJ considered the consistency of Dr. Lorensen's opinion with the record as a whole, as the ALJ summarized plaintiff's treatment records and subjective allegations earlier in the decision. *See* T. 868-76; *see Julie M. v. Comm'r of Soc. Sec.*, No. 8:23-CV-518 (MJK), 2024 WL 664413, at *11 (N.D.N.Y. Feb. 16, 2024) ("The ALJ's detailed summary of plaintiff's treatment history, provided in an earlier section of the written decision, highlights the evidence upon which the ALJ rendered this consistency assessment.") (additional citation omitted). Further, as the Commissioner correctly points out, the ALJ concluded that Dr. Lorensen's opinion was "consistent with evidence showing [plaintiff] reported increased symptoms with exposure to smoke, cold, and weather changes." *Id*. at 876; *see also* Dkt. No. 15 at 9.

Although plaintiff's brief uses the word "consistency," the substance of her argument does not challenge the consistency analysis of Dr. Lorensen's opinion. *See* Dkt. No. 11 at 9-10. Rather, plaintiff appears to contend that the ALJ erred by relying on other evidence of record to render a less restrictive limitation for plaintiff's exposure to respiratory irritants. *See id*. Plaintiff states that

> the state review physicians (S. Sontheneni and S. Putcha) both rendered opinions that [she] would only need to avoid concentrated exposure, however, the ALJ indicates that their respective opinions are only partially persuasive without citation to the record, because they are not supported by the findings set forth in their reports and inconsistent with records obtained after the review.

*Id*.

However, plaintiff does not specify how Drs. Sontheneni and Putcha's opinions are not supported by their findings or "inconsistent with records obtained after review." Dkt.

No. 11 at 10. Plaintiff's argument as written is a conclusory allegation.[6] In sum, plaintiff disagrees with the ALJ's decision to rely on Drs. Sontheneni and Putcha's opinions as opposed to Dr. Lorensen's opinion. *See id.* at 9-10. As such, "plaintiff's 'arguments amount to a disagreement with how the ALJ weighed the evidence, which is within [the ALJ's] province to do.'" *Joseph J. B.*, 2024 WL 4217371, at *11 (quoting *Nichole K. v. Comm'r of Soc. Sec.*, No. 1:23-CV-858 (EAW), 2024 WL 3022592, at *7 (W.D.N.Y. June 17, 2024) (additional citations omitted); *see also Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) (summary order) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it."); *Tina W. v. Comm'r of Soc. Sec.*, No. 5:22-CV-15 (MAD), 2023 WL 157952, at *7 (N.D.N.Y. Jan. 10, 2023) (quoting *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) ("It is not the Court's function to reweigh the evidence on appeal, only to 'decide whether substantial evidence supports the ALJ's decision.'")). Therefore, the undersigned concludes that the ALJ's treatment of Dr. Lorensen's opinion of plaintiff's respiratory limitations is supported by substantial evidence. *See Joseph J. B.*, 2024 WL 4217371, at *1 (quoting *Halloran*, 362 F.3d at 31 (citing *Richardson*, 402 U.S. at 401).

With regards to plaintiff's reaching limitation, the ALJ noted that Dr. Lorensen opined that plaintiff has a mild reaching limitation. *See* T. at 876 (citing *id*. at 709) (*See* Dkt. Nos. 10-7, 10-17). Plaintiff argues that the ALJ erred by not discussing whether she

---

[6] Dr. Sontheneni and Dr. Putcha opined that plaintiff's asthma was "severe" and that she should "avoid concentrated exposure" to fumes, odors, dusts, gases, and places with poor ventilation. T. at 95, 100, 114, 118 (*See* Dkt. No. 10-3). The record also indicates that plaintiff's lungs and chest were clear to auscultation, *see id*. at 432, 463, 493, 527, 603, 615, 624, 648, 734, 749 (*See* Dkt. Nos. 10-7, 10-9, 10-10); and asthma symptoms were mild, intermittent, and well controlled with medication and a rescue inhaler. T. 657, 662, 1915, 1919 (*See* Dkt. Nos. 10-7, 10-22). Plaintiff is a former cigarette smoker who "occasionally smokes marijuana." T. 368, 1919 (*See* Dkt. Nos. 10-7, 10-22).

had a reaching limitation as part of the RFC determination. *See* Dkt. No. 11 at 10 ("However, there is no further discussion of why the [RFC] is devoid of a limitation on reaching."). Although the ALJ's analysis of Dr. Lorensen's opinion refers to plaintiff's reaching limitation and the other evidence of record generally, the other parts of the ALJ's RFC analysis consider this issue because the ALJ discussed plaintiff's testimony, medical evidence and medical source opinions of record, and her response to treatment for her neck and back pain. *See* T. at 869-72 (*See* Dkt. No. 10-17). As the Commissioner correctly points out, the ALJ's consideration of the evidence includes medical records stating that plaintiff's cervical spine was unremarkable; her bilateral upper extremities were normal, had minimal abnormality, and normal or nearly normal strength; and that the range of motion for plaintiff's shoulder and neck improved with treatment. *See* Dkt. No. 15 at 12 (citing T. at 870-72 (*See* Dkt. No. 10-17)). Further, plaintiff's argument does not cite or reference any additional evidence in support of her position that the ALJ failed to consider her reaching limitation. *See* Dkt. No. 11 at 10. The undersigned concludes plaintiff's argument lacks merit because, as with plaintiff's asthma condition and respiratory limitation, plaintiff's argument amounts to a disagreement with the weight of the evidence. *See Joseph J. B.*, 2024 WL 4217371, at *11 (quoting *Nichole K.*, 2024 WL 3022592, at *7).

## V. **Conclusion**

**WHEREFORE**, for the reasons set forth herein, it is hereby:

**RECOMMENDED**, that plaintiff's cross-motion (Dkt. No. 11) be **DENIED**; and it is further

**RECOMMENDED**, that the Commissioner's cross-motion (Dkt. No. 15) be **GRANTED**, and the Social Security Administration's decision be affirmed; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to U.S.C. §636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §636(b)(1); FED. R. CIV P. 6(a), 6(e), 72.

Date: August 26, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge